No. 56,363

THE CITY OF SHAWNEE, KANSAS, A MUNICIPAL CORPORATION, *Appellant*, v. DOROTHY WEBB and WEBB ENTERPRISES, INC., *Appellees*.

(694 P.2d 896)

Opinion filed January 26, 1985.

*William O. Isenhour, Jr.*, of Soden & Isenhour, P.A., of Mission, argued the cause; and *John M. Cox*, of the same firm, was with him on the briefs for appellant.

*Lowell L. Smithson*, of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, argued the cause; and *James A. Snyder*, of the same firm, and *R. Kent Sullivan*, of Payne & Jones, Chartered, of Olathe, were with him on the briefs for appellees.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the City of Shawnee, Kansas, from the final judgment entered after a jury trial in an eminent domain proceeding. The City is the condemnor and appellant. Dorothy Webb and Webb Enterprises, Inc., are the landowners and appellees. The City claims that the trial court erred in refusing to dismiss the landowners' appeal on jurisdictional

grounds; in refusing to dismiss as to one named defendant, Dorothy Webb; in finding unity of use as to two separate but adjoining tracts of land; in admitting evidence of the closing of a nearby highway intersection; in refusing to give a jury instruction proposed by the City; in excluding evidence of certain "comparable" sales; and in denying the City's motion for assessment of costs. By cross-appeal, the landowners contend that the trial court erred in denying their motion to assess costs.

The first issue presented by the City is that the trial court erred in failing to dismiss the landowners' appeal for the reason that the appeal was not filed within the time limits fixed by K.S.A. 26-508, which provides in pertinent part:

"If the plaintiff, or any defendant, is dissatisfied with the award of the appraisers, he may, within thirty (30) days after the filing of the appraisers' report, appeal from the award by filing a written notice of appeal with the clerk of the district court."

We turn to the procedural background. After the City commenced the action by filing its petition, statutory notice was given to the landowners pursuant to K.S.A. 26-503, and on the date fixed a hearing was held. The trial court made the requisite findings of power and necessity, K.S.A. 26-504, and then proceeded to appoint appraisers and fix the time for the filing of their report. They were ordered to file their report with the Clerk on August 24, 1981. Some days later, the court extended the time in which the appraisers were to file their report. The order stated:

"[T]he Court grants the appraisers [an] additional 15 days in which to file the appraisers' report, the report shall be filed on or before the 7th day of Sept., 1981."

A report of the appraisers was filed on September 4, 1981. September 7th, the date mentioned by the trial court in its order, fell on Labor Day. An amended report of the appraisers was filed on September 8, 1981. On September 8, the City's attorney mailed a notice to the landowners, stating:

"You are hereby notified that the Appraisers' Report was filed on the 8th day of September, 1981, in the office of the Clerk of the District Court of Johnson County, Kansas."

This was the only notice of filing mailed to the landowners; no

notice of the filing of the report on September 4 was given. The landowners, Dorothy Webb and Webb Enterprises, Inc., filed a notice of appeal on October 8, 1981. On April 15, 1983, the City filed a motion to dismiss the appeal, for the first time raising the timeliness of the notice of appeal. The trial court overruled the City's motion, and the case proceeded to jury trial.

The City contends that the landowners did not file their appeal within the time limits prescribed by K.S.A. 26-508. The City's argument is based upon our opinion in the case of *Urban Renewal Agency v. Reed*, 211 Kan. 705, 508 P.2d 1227 (1973). In that case the district court appointed appraisers and ordered them to file their report on November 24, 1970. Notice was given to the landowner that a hearing would be held before the appraisers on November 19, that the court set the 24th day of November for filing of the appraisers' award, and that:

"[A]ny party dissatisfied with the award may appeal therefrom as by law permitted within thirty (30) days from the date of filing." 211 Kan. at 706.

The appraisers met on November 19, agreed upon an award, and filed their report on that date. No notice that the report was filed on November 19 was given to the landowner. A notice of appeal was filed on behalf of the landowner on December 23, 1970. The trial court held that the appeal was not taken within time and dismissed the matter. The landowner appealed. We reversed. Pertinent portions of the opinion read:

"K.S.A. 26-504 states that the order appointing appraisers 'shall also fix the time for the filing of the appraisers' report. . . .' It does not say the order shall fix the time 'within which' the report is to be filed, nor 'the last day' for such filing. Accordingly, the order here said the report should be filed 'on' November 24, not 'on or before' November 24. The same observations apply to the statutory form of notice and the notice actually employed. Both fix a date certain for filing, rather than a final deadline for filing.

"What would the average landowner glean from reading the notice given appellant here? He would find that the appraisers would meet and determine his award on November 19, that they were required by the court to file their report on November 24, and that he had thirty days after that filing to take his appeal. He would, we think, inevitably conclude that his last day to appeal was December 24.

"That would be the natural reading of the notice; the same construction might even, as here, suggest itself to experienced counsel. We think further that such must have been the legislative intent for otherwise the required order of the court fixing the filing date and the statutory notice incorporating it would both be meaningless. The effect of both could be nullified at the whim of the appraisers,

by their simply 'filing' the report whenever it suited them. We cannot believe the legislature intended to entrust them with any such power to affect the substantial rights of the parties.

"We therefore hold that for the purpose of computing the parties' appeal time the filing of the appraisers' report under K.S.A. 1972 Supp. 26-505 is effective on the date fixed by the judge for such filing and set forth in the notice of hearing required by K.S.A. 26-506, regardless of the date such report is actually delivered to the clerk of the court." 211 Kan. at 708.

The *Reed* rule was concisely stated in Syl. ¶ 1, as follows:

"For the purpose of computing the parties' appeal time the filing of the appraisers' report under K.S.A. 1972 Supp. 26-505 is effective on the date fixed for such filing by the district judge and set forth in the notice of hearing required by K.S.A. 26-506, regardless of the date such report is actually delivered to the clerk of the court."

The City asserts that the *Reed* case clearly establishes that for the purpose of calculating the thirty-day time period within which an appeal may be filed, the operative date is the date fixed by the judge.

In *Reed*, the landowner was notified of the date on which the court directed the appraisers to file their report. No notice that the report was filed was ever given to the landowner. The report was filed five days early. Under those circumstances, we held that the landowner would not be deprived of the right to appeal when the landowner filed the appeal thirty days after the date on which the landowner was advised the report was to be filed. The rationale of *Reed* cannot apply, however, when a report is filed *later* than the date fixed by the trial court. If, for some reason, the appraisers' report is not filed for thirty days after the date fixed for its filing by the trial court, strict application of the rule in *Reed* would indicate that the landowner must appeal before the report of the appraisers is filed. This cannot be the intent of the legislature when it says that either the condemnor or the landowner, if dissatisfied with the award, may, within thirty days after the filing of the appraisers' report, appeal by filing a written notice of appeal with the clerk of the district court. K.S.A. 26-508. We find the language in *Reed* applicable only when the report is filed on or before the date for filing fixed by order of the court. Where the appraisers' report is not filed until after the date fixed by the court, the parties have thirty days from the date on which the report is actually filed with the clerk of the district court to file a notice of appeal.

The report filed on September 4 was disregarded by all parties. No notice of the filing of that report was ever given by the condemnor to the landowners; instead, that report was ignored and the amended report, filed on September 8, has for all purposes been treated by the parties as the official appraisers' report. That is the report which is mentioned in the notice to the landowners given by counsel for the condemnor. We conclude that the notice of appeal was timely filed.

Next, the City contends that the trial court erred in denying the City's motion to dismiss Dorothy Webb as a defendant. The City contends that this action was prejudicial. The record indicates that Dorothy Webb was designated as a defendant in the original petition; that she was retained as a defendant through and including the filing of the amended appraisers' report and that at the pretrial conference, held on July 1, 1982, the City stipulated that there was no objection to the propriety of the parties; and that, while title to the real estate was vested in Webb Enterprises, Inc., Dorothy Webb was in actual possession of the land. We are at a loss to see how the retention of Dorothy Webb as a defendant was prejudicial to the condemnor, and we conclude that the trial court did not err in denying the motion.

The City, for its third issue, contends that the trial court erred in finding that there was a unity of use as to the entire 112-acre tract of land. The Webb property consisted of 72 acres which we may roughly describe as being the N 1/2 of the SW 1/4 of Section 15, excepting that part thereof previously taken for highway purposes, and the SE 1/4 of the SW 1/4 of Section 15, containing 40 acres. Thus, we have an "L" shaped piece of property, all in the SW 1/4 of Section 15, connected, with no highways, public easements, or division of any kind between the tracts.

The City argues that whether or not there is a unity of use should be decided by the trial court and not the jury. We agree. In this case the trial court in fact made such a decision, and did not submit this as an issue to the jury. There was no error. The City also argues that the trial court erred in not ruling on the unity of use issue prior to trial. We agree that in condemnation proceedings it is preferable for the trial court to rule on this issue in advance of trial so that the parties may properly prepare their expert witnesses and other evidence. In this case, the trial court indicated before trial that it would reserve its ruling until it

heard the evidence, but that it would probably rule that there was a unity of use. The court's final ruling that there was a unity of use did not come as a surprise to either party. All of the expert testimony was geared to the before and after value of the entire 112-acre tract. The only evidence as to unity of use came from the landowners' witnesses. The City announced prior to trial that it would not present any evidence on that issue and it did not do so. Under the circumstances the City was not prejudiced by the trial court's failure to make a final ruling on that issue prior to trial.

Finally, on this point, the City argues that the trial court ignored what the City characterizes as "the well-established rule that the burden of proof on this issue is upon the landowner." The landowners contended that there was a unity of use and presented evidence to establish that claim. The City presented no evidence on that issue. The evidence of the landowners was that the 72 acres was fenced and the Webbs raised cattle and buffalo thereon. The south 40 acres was unfenced and was farm ground. Crops raised thereon—or at least the owners' share— were used to feed the livestock. All of the land was contiguous, was under one ownership and management, and was all in- cluded in their livestock and farming operation. The only evi- dence supports the trial court's finding of unity of use. We find no error.

For its fourth point, the City contends that the trial court erred in admitting evidence as to the closing of the intersection of 71st Street and K-7 highway. Discussion of this point necessitates a further description of the property. K-7 highway runs along the west side of the north 72-acre tract. K-10 highway runs along the north edge of that property, at least to the mid-line thereof, from which K-10 veers to the northeast. Old K-10 highway, now known as Midland Drive, continues on to the east and adjoins the north boundary of the east portion of the 72-acre tract. 71st Street runs along the south boundary line of the 40-acre tract. It intersects K-7 highway about 1300 feet west of the landowners' south property line. The City contends that evidence of the closing of the K-7 and 71st Street intersection should not have been received in evidence because the closing of that intersec- tion was not explicitly mentioned in the appraisers' report. The City cites and relies upon *Sutton v. Frazier*, 183 Kan. 33, 325 P.2d 338 (1958), which states in Syl. ¶ 8:

"In an eminent domain proceeding the report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment, and the landowners may rely implicitly on the report filed which becomes the evidence and the only evidence of the commissioners' doings."

However, in the later case of *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P.2d 1165 (1974), our court was faced with the similar contention that claims of loss of access were limited by the language of the appraisers' report, and we held that where access was being taken which affected the property, it could be taken into consideration—even though not mentioned in the appraisers' report—in determining the before and after values of the property. Here, the appraisers' report gave a detailed metes and bounds description of the property taken, the Webb property being described as tract No. 36. The report then says:

"Lands abutting *said highway* shall have no right or easement of access thereto." (Emphasis supplied.)

When the appraisers spoke of "said highway," were they speaking of K-7 highway or K-10 highway or Midland Drive or 71st Street? The report does not say. Nowhere in the appraisers' report is there a definition of "said highway." No highway is mentioned or described. The evidence, however, indicates that the landowners, by this action, lost all access that they had to K-7 highway and specifically a 60-foot entryway on the west edge of the north 72 acres. They will continue to have access to K-10 highway through one 60-foot entryway along the north line of their property. It appears that there is a further unused entry at the northeast corner of the property onto old K-10 highway, or Midland Drive, which remains undisturbed by this taking. Finally, the parties agree that the landowners' entry from their south boundary line onto 71st Street remains unchanged.

Access from the southern part of the land to K-7 highway was along 71st Street. The City agrees that the intersection of K-7 and 71st Street will be closed as a result of this project. Hereafter access from the southern part of appellees' land to K-7, according to maps in evidence, will be only by a circuitous route over county roads. Instead of access within one-quarter mile, the landowners or those seeking entry to the land from 71st Street will have to drive some three and one-half miles to the north and

east or some nine miles to the south and east. There was testimony that large trucks might be able to make it, but with great difficulty. The tenant who farms the land and who comes down K-7 highway from the north will also have difficulty in transporting his machinery to the farm.

The facts of this case are somewhat similar to the issues involved in *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, 559 P.2d 347 (1977). There, the construction of a limited access facility was accompanied by the building of a short street along and in front of plaintiff's property. Access to the limited access facility highway was not possible through the use of a frontage or service road, but by various circuitous routes ranging up to 1.75 miles in length. We held that lack of access was properly considered. While here the landowners' access to their land from 71st Street is not taken, landowners' loss of their K-7 entryway and the closing of the intersection between 71st Street and K-7 greatly impairs the landowners' access to their farm and land. It makes it difficult if not impossible to route large trucks or machinery to the property. This interferes with the highest and best use of the land. As we said in *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 694, 676 P.2d 84 (1984), "[W]e have long recognized a trial court has broad discretion in determining what evidence will be allowed in an eminent domain proceeding . . . ." Under the facts of this case we hold that the trial court did not abuse its discretion in admitting evidence of the closing of the nearby intersection.

The City next contends that the trial court erred in refusing to give the City's proposed instruction No. 15. The proposed instruction reads as follows:

"The court has determined as a matter of law that the closing of 71st Street is not a taking of such right of access in this case. The closing of 71st Street is a factor that you should not consider in determining the market value of the remainder."

The City asked that this be added to the language of a standard limited access instruction given by the trial court. What we have previously said about the admissibility of evidence of the closing of the intersection of 71st Street and K-7 highway is applicable here. In addition, the proposed instruction speaks of "the closing of 71st Street," and is factually a misstatement, since 71st Street was not closed. Only its intersection with K-7 was affected. The trial court did not err in refusing to give the proposed instruction.

Next, the City contends that the trial court erred in excluding evidence of three real estate sales which the City contended were comparable. The City originally proposed ten comparable sales. The trial court determined that three of the sales were not properly comparable and could not be used. The City added two additional sales, giving its experts a total of nine comparable sales upon which to base their testimony. The landowners had evidence of twelve comparable sales. All of the comparable sales, evidence of which was admitted by the trial court, were sales occurring since 1977. The three sales stricken by the trial court occurred seven or eight years prior to the date of taking. As we have previously noted, the trial court has broad discretion in determining what evidence will be admitted in an eminent domain proceeding. Excluding three remote sales, while permitting the parties to use evidence of twenty-one other sales, all of which were within four years of the date of taking, was certainly not an abuse of discretion on the part of the trial court. The best and most reliable evidence would of course be that of sales which were close in time to the date of taking. The trial court did not err in excluding evidence of the three remote sales.

Finally, we come to the motions to assess costs. After the verdict was returned, the landowners filed a motion under K.S.A. 60-2002 to tax certain costs, including attorney fees, expert witness fees, and the cost of discovery depositions, claiming that the City's conduct was unreasonable and oppressive. The trial court denied the motion. The City then filed a motion for the assessment of costs of frivolous claim under K.S.A. 60-2007, seeking reasonable attorney fees and expenses incurred by the City in opposing the landowners' motion to tax costs, which the City characterized as frivolous and in bad faith. The trial court denied that motion. The denial of the City's motion forms the basis for the last issue raised by the appellant, and the denial of the landowners' motion forms the basis of the cross-appeal.

We have carefully reviewed the briefs and arguments of the parties and the record. This case was ably tried by competent counsel. The fact that the landowners did not prevail in their motion to tax costs does not make the motion frivolous; a factual basis existed upon which the motion was based. We conclude, as did the trial court, that the City's conduct was not unreasonable or oppressive and that the landowners' motion was neither

frivolous nor made in bad faith. The assessment of costs in the trial court is discretionary with that court. *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 472, 625 P.2d 472 (1981). The trial judge in this case did not abuse his discretion in denying both motions.

The judgment is affirmed.