No. 65,941

BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellant,* v. WILLARD J. KISER LIVING TRUST, *et al., Appellee.*

(825 P.2d 130)

Opinion
filed January 17, 1992.

*Geary N. Gorup*, of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Phillip Mellor*, of Mellor & Miller, P.A., of Wichita, argued the cause, and *William P. Higgins*, *Arden P. Miller*, and *Mark Mellor*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a condemnation action. The Board of County Commissioners of Sedgwick County, Kansas, (the County) the

condemner, appealed the appraisers' award of $481,525 for a partial taking to the district court under K.S.A. 26-508. Following a trial to the court, Stephen L. Clark, the landowner, was awarded compensation in the amount of $2,858,300. The deficiency judgment in favor of Clark is $2,376,775 plus interest. The district court awarded Clark attorney fees under K.S.A. 26-509 in an amount equaling 40% of the deficiency judgment, including interest. The County appeals.

Jurisdiction is based on our granting Clark's motion to transfer under K.S.A. 20-3017.

The County asserts numerous errors on appeal. We reverse on two primary rulings of the trial court. We hold that the County's expert, Reg Cordry, should have been permitted to testify as to market value, and that both Cordry and Norman Albright, also an expert for the County, should have been permitted to testify as to highest and best use. Other rulings of the trial court affected by reversal of these two primary rulings are discussed in the opinion.

We vacate the judgment and remand to the trial court to hear the testimony of Cordry as to market value, and both Cordry and Albright as to highest and best use. We do not remand for a new trial on all issues. It is not intended that the trial court rehear the current record. The case was tried to the court because the parties waived a jury trial. The trial court is to consider the testimony of the County's experts, together with the current record, and then enter judgment as to value and, if appropriate, attorney fees.

Facts

The subject property, 78.5 acres of land improved with a single family residence, is located outside the city limits of Wichita. Clark and his wife purchased the property with the intent of building a home, which was to set the tone for a proposed upscale residential development. The Clarks began planning the residence in 1983, commenced construction in September or October 1985, and moved into the 9,000-square-foot residence in December 1987.

The property was zoned "R-1," suburban residential district. The proposed development required zoning for "AA," single fam-

ily dwelling district. In 1987, Clark filed an application for subdivision approval with a sketch plat and a request for the zoning change. On February 18, 1988, the Wichita-Sedgwick County Metropolitan Area Planning Commission (MAPC) unanimously recommended approval of the zoning change subject to platting the property within two years. The County approved the zoning change contingent on completion of the plat within two years.

Clark received an offer of $170,525 from the County to purchase a 13.164-acre right-of-way and a 37.246-acre remnant for the construction of the "K-96 Expressway," a/k/a the "Northeast Circumferential," a/k/a the "John Sedgwick Highway." Clark did not accept the offer. The County filed a petition for eminent domain. Tract #26 in the eminent domain action was a 13.164-acre diagonal right-of-way which cut the remainder of Clark's tract into two parcels, one lying southwest of the right-of-way containing 37.272 acres and the other northeast of the right-of-way containing 28.064 acres. The 37.272-acre remainder has no access. The 28.064-acre remainder includes Clark's residence on 5.74 acres.

The case caption of the present action was taken from the original petition for eminent domain. The Willard J. Kiser Living Trust was the owner of one of the other tracts. Clark is the only landowner involved in this appeal.

The amended report of appraisers determined the value of Clark's property to be $1,321,420 before the taking and $839,895 after the taking for a total award of $481,525. The district court approved the appraisers' amended report. The County paid the appraisers' award to the court and it was disbursed to Clark.

The parties stipulated that the date of the taking was April 19, 1989.

Clark filed a notice of appeal from the appraisers' award. The appeal was docketed as case No. 89 C 1425. On the same day, the County filed its notice of appeal. The County's appeal was docketed as case No. 89 C 1438.

Both of the appeals were before the trial court for a discovery conference. At that conference the court noted that an order of dismissal would be filed in case No. 89 C 1425, Clark's appeal. The County's appeal, case No. 89 C 1438, was to go forward for a pretrial conference. The discovery conference order in the County's case was approved by both parties; however, the trial

judge did not sign the order. The appearance docket confirms the action taken in the order. Clark's appeal, case No. 89 C 1425, was dismissed for lack of prosecution. The case at bar proceeded as the County's appeal.

The County filed a motion to dismiss its appeal. The County alleged that its expert appraiser, upon whom the County relied in filing its appeal, was not willing to testify in court. The County asserted that it was attempting to mitigate damages in the event it lost the appeal because Clark may be entitled to attorney fees. Under K.S.A. 26-509, attorney fees are allowed only if the landowner is successful under the County's appeal. Clark objected to the dismissal, arguing that the court did not have the power to dismiss the appeal without his consent, which he withheld. The trial court agreed with Clark and denied the County's motion to dismiss its appeal.

Clark filed a motion in limine to prevent the County from presenting evidence of his foreknowledge of the proposed highway route. Clark argued that the matter was irrelevant as to the issue of the values before and after the taking because a governmental entity may not set aside a highway corridor to limit a landowner's use, thereby depressing the value of the property before the actual taking. The County countered that evidence of foreknowledge is relevant as to mitigation of damages. According to the County, the trier of fact should be allowed to consider whether Clark deliberately built his house and platted the land as a subdivision to elevate its value before the taking. The trial court granted Clark's motion, reasoning that until a condemnation action is filed, the owner of the property is entitled to use the property in any lawful manner.

Clark also filed a motion to direct the method of ascertaining value. Clark requested the trial court to direct the use of the income or development approach to appraise his property before the taking and the same or cost approach to appraise the value of the property after the taking.

The County furnished Clark with a list of comparable sales. This list included residential properties from the Wichita and Kansas City areas. The County's appraisers testified at the hearing. The trial court found that the properties were not comparable and ruled that there was no basis for the County to proceed with

the market data approach due to the lack of comparable sales. The trial court entered an order directing that the development and/or cost approach should be used to value Clark's property.

After receiving the County's expert reports, Clark filed a motion in limine requesting that valuation testimony by the County's experts, Albright and Cordry, be deemed inadmissible. In support of his motion, Clark asserted that the expert reports valued the land based on the market data approach, relying on comparable sales, in violation of the trial court's previous ruling. The trial court heard the motion on July 25, 1990. At the hearing, Clark presented the reports of Albright and Cordry along with their depositions in which they were questioned about their reports.

The trial court granted Clark's motion, prohibiting the fact finder from considering the conclusions of value of the land by Cordry and Albright. The trial court reasoned that their opinions of value were based on the market data approach in contravention of its previous ruling that no comparable sales existed. It is this ruling as to Cordry that we question and discuss later in the opinion. The trial court also reasoned that Albright's opinion of value lacked foundational support.

The trial commenced four days later. Both parties agreed to waive a jury. Clark, who was also a real estate developer, testified that the value of the undeveloped land (78.5 acres less his 5.74-acre homesite) before the taking was $1,582,626 using what he characterized as the developmental method of valuation. He further stated that the value of his house and 5.74-acre homesite before the taking was $1,825,159 using the cost approach for the house and the developmental approach for the homesite. Clark concluded that the total value of the property before the taking was $3,407,785 (rounded to $3,408,00) and after the taking was $580,000. He emphasized the 37 acres with no access had no value. He stated that because something would have to be done to block the view of the highway and attenuate the noise, he would not separate the 28-acre remainder from the homesite. Thus, a residential development was no longer possible. Clark's estimate of value after the taking included the building of a berm at a cost of nearly $500,000. The difference between the before and after values was $2,828,000.

James L. Gardner II, a real estate appraiser, also testified for Clark. Gardner reasoned that the value of the undeveloped land, less the homesite, before the taking was $1,324,000 using what he characterized as the development approach. Gardner stated that the value of the residence and homesite before the taking was $2,033,000 using the cost approach for the residence and the development approach for the 5.74 acres. The total value of the entire tract before the taking was $3,357,000. Gardner estimated the total value of the house and remaining land after the taking at $549,700. Gardner concluded that difference in values before and after the taking was $2,807,300.

The trial court had excluded the County's experts; consequently, the County presented no evidence of value of the property before and/or after the taking.

## Findings of the Trial Court

The trial court found: (1) The most advantageous use of the property before the taking was as a residential development; (2) the upgrade in zoning from R-1 to AA was granted contingent upon final platting by April 1990; (3) the property became involved in these proceedings more than a year before that; (4) municipal utilities, including water and sewer, were available; (5) the property was eminently suited for development, and development had started; (6) the value of the entire tract before the taking was $3,408,000; (7) the 37-acre remainder is entirely without access; (8) even after construction of the berm, the sound levels experienced inside the residence, outside in the yard, and over the entire balance of the 28-acre remainder were intrusive, unpleasant, and objectionable; (9) further development of the 28-acre remainder is improbable; (10) the value of the entire remainder after the taking is $549,700; and (11) the amount of compensation and damages to be awarded Clark is $2,585,000. In an order nunc pro tunc, the trial court corrected the damages to be awarded Clark to $2,858,300.

The trial court credited the County with the $481,525 already paid and entered judgment for Clark for the deficiency sum of $2,376,775 plus interest of 11% per annum from April 20, 1989, until paid. The trial court awarded Clark attorney fees equal in amount to 40% of the deficiency judgment, including interest.

Although we vacate the judgment and remand the case, we shall discuss disputed trial issues raised by the County which should be decided before the case is again considered by the trial court. Because the parties waived a jury trial, we remand to the trial judge who initially decided the case.

### The County's Motion to Dismiss its Appeal

The importance of this issue relates to the ability of the trial court to award attorney fees to Clark under K.S.A. 26-509. K.S.A. 26-509 allows the court to award the landowner attorney fees when the condemner appeals and the jury renders a verdict in an amount greater than the appraisers' award. Attorney fees may not be awarded on a landowner's appeal. *In re Central Kansas Electric Coop., Inc.*, 224 Kan. 308, 319, 582 P.2d 228 (1978).

The County argues that the trial court erred in denying its motion to dismiss its appeal. The County suggests the trial court could have allowed Clark to pursue his original appeal, which could have been reinstated with the County's consent. The County asserts that Clark allowed his appeal to be dismissed, hoping to obtain a windfall of attorney fees under K.S.A. 26-509.

Clark insists that his appeal was dismissed with the consent, or at least the acquiescence, of the County. The County did not appeal the dismissal of case No. 88 C 1425, Clark's appeal. The dismissal is final and not subject to collateral attack. Clark further argues that the County's appeal may not be dismissed without his consent, citing *City of Wellington v. Miller*, 200 Kan. 651, 438 P.2d 53 (1968). We agree. When a valid appeal is taken by a party from an appraisers' award, K.S.A. 26-508 places the other parties in the position of cross-appellants and the appeal cannot be dismissed over the objection of any party having an interest in the tract. 200 Kan. at 653.

The July 18, 1989, discovery conference order for Clark's appeal, case No. 89 C 1425, states that a dismissal will be filed. The discovery conference order was approved by counsel for both parties and signed by the trial court.

The trial court sent a notice and journal entry of dismissal to both parties. The notice stated that the journal entry of dismissal would be filed on September 25, 1989, unless cause be shown for not doing so. The journal entry of dismissal was filed on

September 26, 1989. No objection was lodged by the County. The record relating to the dismissal of Clark's appeal supports Clark's contention that the County consented to or acquiesced in the dismissal of Clark's appeal.

### The Development and/or Cost Approaches

We stated in *Ellis v. City of Kansas City,* 225 Kan. 168, Syl. ¶ 3, 589 P.2d 552 (1979):

"The three generally accepted approaches used by appraisers in valuing real property are: (a) the market data approach which is based upon what comparable properties had sold for; (b) the depreciated replacement cost or cost approach which is based upon what it would cost to acquire the land and to build equivalent improvements less depreciation; and (c) the income approach or capitalization of income which is based upon what the property is producing or is capable of producing in income."

See *State Highway Commission v. Lee,* 207 Kan. 284, 485 P.2d 310 (1971).

The income approach, also known as the development approach when applied to suburban land eminently suited for subdivision and development, begins with the selling price of lots into which the land may be divided, which is then reduced by the development costs and by a discount factor based on the time required to sell the lots. 207 Kan. 285, Syl. ¶¶ 14, 15.

The market data approach, also referred to as the comparable sales approach, is the most common method of valuing real property and should be used when there have been sales of comparable properties in the same locale, near the time of the taking. When the property is so unique that there is no ascertainable market and there are no sales of reasonably similar or comparable property, the other methods—depreciated replacement cost approach or the income approach—may be used. *Ellis,* 225 Kan. at 172. The trial court has broad discretion in determining what other sales are comparable. Such determination should be made prior to trial. *City of Shawnee v. Webb,* 236 Kan. 504, Syl. ¶ 4, 694 P.2d 896 (1985).

The County argues that the trial court abused its discretion in allowing evidence of the development and cost approaches *to the exclusion* of the market data approach. The County asserts sales existed which were comparable and should have been considered.

The County provided two lists of comparable sales, a list of 10 properties from Wichita and a list of 8 properties from the Kansas City area. The trial court correctly ruled that the sales of properties from the Kansas City area were not comparable because they were not from the same market. Albright, an expert for the County, testified about the list of alleged comparable Wichita properties. All but one of the properties were residential houses on residential lots. The remaining property was a 20-acre horse ranch with a 2,278-square-foot house.

The trial court's finding that the County offered no comparable sales is supported by the evidence. Absent comparable sales to support the market data approach, one of the other methods of valuation—the development approach or the cost approach, or both—must be used. The trial court did not abuse its discretion in ruling that approaches of valuation should be limited to the development and/or cost approaches.

### Valuation Testimony by the County's Expert Appraisers—The Highest and Best Use of the Property

Four days before trial, the trial court granted Clark's motion in limine to prohibit the County's experts from giving their conclusions of value, reasoning that the expert appraisers had used the market data approach in contravention of the court's previous ruling. The effect was to send the County to trial with no evidence of value. Thus, the only evidence of value was presented by Clark.

At trial, the County proffered the appraisal reports and depositions of Cordry and Albright to preserve the issue for appeal. The County called Cordry as a witness and asked him his opinion of the highest and best use of the property. Clark objected on the grounds that Cordry's opinion of the highest and best use of the property was only relevant in connection with an appraisal. Clark argued that because the court ruled Cordry could not testify to an opinion of value, his opinion of highest and best use of the tract was also inadmissible. The County argued that an appraisal of the property and an opinion of highest and best use are two separate ideas. The trial court sustained Clark's objection and prevented Cordry from testifying about his opinion of highest and best use.

The County argues that the trial court erred in excluding Cordry's and Albright's opinions of value and of highest and best use. The County asserts that such evidence was relevant to the issues of damages and to the credibility of Clark's expert appraiser. The County does not deny that its appraisers' reports appear to use the market data approach, but argues that each of the appraisers used that approach with the good faith belief that the proposed development was too speculative, conjectural, and remote to value the the land with the development approach. The County contends that the highest and best use of the land was a question of fact to be determined by the trier of fact; thus, the trial court erred in excluding this evidence.

Clark argues that the County's appraisers' reports utilized the market data approach in violation of the trial court's order. Thus, their opinions of value were properly excluded. As to the exclusion of the experts' opinions of highest and best use, Clark reasons those opinions were predicated on the assumption that sewer service was not available, contrary to the trial court's finding. In addition, Clark contends their opinions were not supported by any study or personal experience in the Wichita area. Thus, the trial court properly excluded these opinions.

In his appraisal report, Cordry stated the highest and best use of the property at the time of the taking was for speculative investment pending future development. He based this conclusion on two considerations. First, there was limited demand for new residential construction. Several subdivisions with sewers and comparable locations were not selling well. Second, the subject tract did not have sewers available. Cordry's report states it values the property using the *cost approach*. First, Cordry determined the value of the land by using comparable sales of undeveloped land. Second, he estimated the cost of reproduction of the residence, less depreciation. These figures were then added to achieve total values before and after the taking. Cordry assigned a "functional depreciation" rate of 40% of the cost of the residence due to overimprovement. His estimated value of the property before the taking was $945,167 and after the taking was $638,020 for a difference of $307,147. No objection was made by Clark to Cordry's qualifications as an expert.

In his deposition, Cordry admitted to appraising only the *land* using the market data approach. This testimony was read to the court at the hearing on the motion in limine seeking to prohibit his trial testimony of value. Clark directed the court to the following questions and answers in Cordry's deposition:

"Question, 'All right. So in establishing the land value, you used the market comparison approach, did you not?'

"Answer, 'Essentially, yes.'

"Question, ' "Essentially" bothers me.'

"Answer, 'Yes, I did.' "

However, Cordry's further explanation at the deposition stated:

"Again, I'm not trying to be argumentative, as a portion of the cost approach, establishing a value of the land, there is an element of market comparison, although it is not what appraisers call the market comparison approach in that particular course. The logic processes are the same and if you were to define it by itself, as an independent approach, it would be called a market comparison approach."

Cordry did use the cost approach. We have identified the cost approach as "what it would cost to acquire the land and to build equivalent improvements less depreciation." *Ellis,* 225 Kan. at 172. The County asserted that development was not feasible at the time of the taking primarily because the County alleged sewers were not available to the tract. Cordry utilized the cost approach which involved using market data of sales of undeveloped land to determine the cost of acquisition of the land. The trial court directed that the development *and/or* cost approaches should be used. Cordry's method was not in violation of the court's ruling.

In his report, Albright first stated the highest and best use of the property was as a residential estate and land to hold for speculation of future development. Albright based this opinion primarily on his conclusion sewers were not available to the land. Albright calculated the speculative value of undeveloped land in the vicinity using market data of comparable sales of undeveloped land. Albright estimated the replacement cost of the residence new at $1,500,000. He stated that a heavy depreciation charge for overimprovement applied. Albright then estimated the value of the property before the taking at $1,000,000 and after the taking at $750,000 for a difference of $250,000.

The trial court, after reviewing Albright's appraisal report and deposition, observed:

"Although Mr. Albright asserts the cost approach was used, it is quite clear there is simply no basis in fact for such a conclusion. It appears the appraiser literally made no notes or computations (or had access to same at the time of his deposition) to support the conclusions drawn by him. Based on the data set forth in the report and elicited in the deposition, the Court would be compelled to sustain an objection to a conclusion of value by Mr. Albright based upon a cost approach for the reason of lack of foundational support for such a conclusion."

At the proffer of Albright's testimony, Clark waived Albright's qualifications. We have observed that once a witness has qualified as an expert, a court cannot regulate the factors used or the mental process by which the witness arrives at the conclusion. These matters can only be challenged by cross-examination testing the witness' credibility. However, if the credibility of the testimony is otherwise destroyed, it should be stricken in response to a proper motion. *State Highway Commission v. Lee*, 207 Kan. at 297-98.

K.S.A. 60-456(b) vests the trial court with authority to limit an expert's opinion testimony. Admission of expert testimony lies within the sound discretion of the trial court and its ruling thereon will not be disturbed on appeal absent an abuse of discretion. *Walters v. Hitchcock*, 237 Kan. 31, 35, 697 P.2d 847 (1985).

Our review of the record supports the trial court's finding that Albright's conclusions of value lacked foundational support. In his deposition, Albright could not break down his before and after values into separate components of land, replacement cost of the improvement, and depreciation. He stated he appraised the property as a whole in one figure to save confusion. We cannot say the trial court abused its discretion in excluding Albright's opinion of value.

Clark and James L. Gardner II, Clark's expert, relied on comparable sales of residential lots to value the property under the development approach. Clark and Gardner valued the house and the 5.74-acre homesite using the cost approach, assigning values of six lots based on comparable sales of residential lots. (The 5.74-acre site was equivalent in area to six lots.)

Clark explained on direct examination how he arrived at his opinion for the value of the undeveloped land immediately prior to the taking:

"A. We—we valued or priced each lot in relationship to what we knew about the market. . . ."

Later, on cross-examination, this was re-affirmed:

"Q. And when determining a value, projected value for this land under the developmental approach, do you not have to take into consideration the estimate of the value in the market place of that type of lot in the Wichita area as a starting point?
"A. The value of the lot?
"Q. What they're selling for.
"A. Yes."

Gardner explained his investigation on value and his use of other properties in the Wichita area.

"A. . . . Accordingly, and with the instructions from the Court, I proceeded with the developmental approach, which estimated the lot value, and I surveyed a number of existing east side developments to ascertain what a— a market value would have been for the—for the subject lots as proposed based on the sale of—of lots elsewhere in the—in the competitive eastern Wichita and Sedgwick County market.
"Q. Now, let me interrupt you.
"There again doing so, were you able to ascertain the probable selling price of lots into which this property might be subdivided?
"A. Yes, sir.
"Q. All right. Go ahead, please.
"A. Would you like an enumeration of those subdivisions that were considered?
"Q. Yes, please.
"A. All right. We—I did a—a survey of all of the Lakepoint and Tallgrass development sales since their inception.
I had Columbian Title do a computer printout for the past five years of— of all of their sales and transactions.
The principal areas that I selected as most comparable included the Tallgrass area, the Penstemon, Wilderness and Woodspring areas since they were the areas that have sold or had the most activity and the most recent activity."

The above testimony demonstrates that Clark and Gardner also used the market data approach as an element in assigning values to the land under both the development approach for the undeveloped land and the cost approach for the 5.74-acre homesite. Under the cost approach, some method must be used to value

the land. Clark and Gardner valued the land using comparable sales of residential lots based on their opinions that the highest and best use of the property was for residential development. Cordry valued the land using comparable sales of undeveloped land based on his opinion that a residential development was not feasible at the time of the taking and the highest and best use of the property was to hold for speculation of future development.

The issue of whether the land was eminently suitable for development was a disputed issue of fact. The trial court found that the highest and best use of the property was for a residential development. However, this finding was made without receiving the County's evidence to the contrary. We note that K.S.A. 26-513(d) lists factors to be considered in condemnation actions. Factor one is: "The most advantageous use to which the property is reasonably adaptable."

PIK Civ. 2d 11.11 states:

"In arriving at the market value of the land and interest taken, you should consider all of the possible uses to which the land could have been put, including the best and most advantageous use to which the property was reasonably adaptable, but your considerations must not be speculative, conjectural, or remote. The uses which may be considered must have been so reasonably probable as to have had an effect on the market value of the land at the time of the taking."

The trier of fact should have considered evidence from both parties on the issue of highest and best use.

Although the issue of highest and best use relates to value, it does not follow under the facts of this case that, because an expert's opinion as to value is inadmissible, the expert's opinion as to highest and best use should also be excluded.

The trial court erred in excluding Cordry's opinion of value and the opinions of Cordry and Albright as to highest and best use of the property. The exclusion of the County's valuation expert testimony resulted in Clark presenting the only admissible evidence of valuation. The trial court's exclusion of such evidence was reversible error and requires that the case be remanded for the trial court to receive the opinions of Cordry and Albright as to highest and best use and the opinion of Cordry as to market value under the cost approach.

### Clark's Foreknowledge of the Highway's
### Proposed Location

Prior to trial, the trial court granted Clark's motion in limine to prevent the introduction of evidence concerning his foreknowledge of the route of the proposed highway across his tract of land. At trial, the parties stipulated to the proffer of what Clark's testimony would be on the issue.

The County argues that the proffered evidence was relevant and admissible as to (1) the reasonableness of valuing the property under the development approach and (2) the mitigation of damages because Clark knew the right-of-way would cut his property in half before he commenced any efforts to develop the property. The County presents its argument as follows:

"Essentially, the argument of the Condemnor is that a landowner should not be permitted to maximize damages by taking steps to raise the value of the land by taking superficial steps towards the development of a subdivision which in good faith he knows will never be [built] due to the building of the highway, and that even the Landowner should reasonably understand the highest and best use of the tract of land would be subject to the highway to come through his property before he commences any steps towards the development of such tract."

Clark counters the County's argument with two assertions. First, the County is arguing that it should be able to announce its intention to build a highway and, by so doing, freeze the price of the land. Clark terms this notion oppressive condemnation by proclamation. Second, Clark states that the stipulated proffer of evidence does not support the County's contention. We agree. The proffer indicates that Clark did not know the definite location of the highway when he bought his land, planned his subdivision, planned his residence, or when he commenced construction of his residence. The stipulation further states that Clark first received notice from the County that it planned to take his land in September 1988.

Clark relies on *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 594 P.2d 671 (1979). *Ventures* involved the same highway as the present action.

The County, in the case at bar, attempts to distinguish *Ventures*. It states that *Ventures* and the cases upon which *Ventures* relied were concerned with the government's abuse of restricting

lawful use of land to accommodate potential future uses. The County asserts that the present case involves a different abuse, one by the landowner.

Clark asserts that influence of the public project for which the land is being taken must be ignored. In support of this assertion, Clark cites 4 Nichols on Eminent Domain § 12B.17 (3d ed. rev. 1990).

Clark relies upon our cases which have addressed the "project enhancement" issue. We have established a general rule that a landowner is not entitled to have the value of his land enhanced merely by the result of the public improvement. *Lapham v. Urban Renewal Agency*, 211 Kan. 869, 870, 508 P.2d 507 (1973).

> "In a condemnation case the property owner should neither be penalized nor benefited by any deflationary or inflationary effect of the nature of the improvement itself. In the trial of a condemnation case involving a long delay between the announcement of the public project and the actual taking of the property, the trial court must, of necessity, be given a wide discretion to receive evidence as to the project plans and the time and manner of their initiation, as bearing upon the weight and credibility of the expert witness testimony." 211 Kan. 869, Syl.

In *Hudson v. City of Shawnee*, 246 Kan. 395, 406, 790 P.2d 933 (1990), we stated: "The general rule is that *enhancement* or depressing of value due to anticipated improvements by the project for which condemnation is sought is excluded in determining fair market value."

The rule preventing evidence of the depressing of a landowner's property value does not squarely apply in the case at bar. Neither the County nor Clark are arguing that public knowledge of the highway depressed the value of his property. However, the County is arguing that due to the highway project, Clark's property could not have been used as a subdivision because the highway was planned to go through the middle of his tract. Thus, indirectly, the County is arguing that the impact of the highway project reduced the available use of the property.

Clark was entitled to use his property for its highest and best use until the taking. The trial court did not err in granting Clark's motion in limine preventing evidence of Clark's foreknowledge of the highway's route.

### Conversations with Clark's Expert Witnesses

The County alleges that the trial court erred in excluding the testimony of two of its witnesses, Jack Galbraith and Jim Weber. The County asserts that Clark's expert witnesses John Gist, Brent Wooten, and Gardner, in Clark's case in chief gave testimony regarding conversations they had had with Galbraith and Weber. The County does not set out this testimony but does refer to the record. The County alleges the testimony of Galbraith and Weber was proffered to refute the content of the purported conversations with Gist, Wooten, and Gardner.

Clark argues that Galbraith's proffered testimony was beyond his pretrial essence statement; thus, the trial court appropriately excluded it. In addition, he asserts that the proffered testimony does not contradict any testimony given by Clark's witnesses. There were no hearsay objections when Clark's witnesses testified.

Gist testified Galbraith indicated that prior to submitting a preliminary plat, Clark should file for a change of zoning from R-1 to AA. Galbraith's proffered testimony agreed that he told Gist a zoning change was needed. Clark is correct; Galbraith's testimony does not contradict Gist's. Thus, although it appears Galbraith's testimony was not beyond the essence statement contained in the County's pretrial questionnaire, Galbraith's testimony did not contradict Gist's testimony; in fact, it agreed with Gist's. The exclusion, even if erroneous, was harmless error.

As to Weber, Clark asserts that Weber was prevented from testifying because he was not listed on the County's list of witnesses on the pretrial order. Weber was in no sense a rebuttal witness. Therefore, the trial court did not abuse its discretion in prohibiting his testimony. Furthermore, Clark asserts that no proffer was made of Weber's testimony.

It is necessary to examine the testimony of Wooten and Gardner regarding Weber. Wooten testified that he contacted Weber, a civil engineer with the public works department, and Darryl Osborn, the plant facilities maintenance man. As a result of this investigation, Wooten determined that there was available sewer capacity as planned in Clark's sewer proposal. He did not state Weber had approved the plan.

The County refers to Gardner's testimony. Weber is not mentioned in the portion of Gardner's testimony cited by the County.

The pretrial order controls the subsequent course of the trial, unless modified by the court to prevent manifest injustice. K.S.A. 1990 Supp. 60-216. The trial court has broad discretion in admitting or excluding testimony of witnesses not specified in the pretrial order. *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 124, 689 P.2d 1187 (1984).

The County has failed to show how the proffered testimony contradicted previous testimony by Wooten or Gardner. Thus, the County has failed to show the trial court abused its discretion in excluding Weber's testimony.

### The Highest and Best Use of the Property

The County contends that the trial court erred in finding the highest and best use of Clark's property was for residential development because sewer services were not available to the tract. The County places great weight on the fact that Clark's proposed sewer plan had not been approved; thus, at the time of the taking the tract did not have sewer service available. The County contends the proposed development was conjectural, speculative, and remote.

Clark counters that the undisputed evidence shows that the proposal was feasible and would have been approved; consequently, the development was not conjectural, speculative, or remote.

We vacate this finding on the basis of our ruling that the County's experts should have been permitted to testify as to highest and best use. Upon remand, the question as to highest and best use is an open one for the trial court's determination.

### Abandonment

Next, the County argues that Clark's development had been abandoned at the time of the taking.

The trial court found that platting would have been completed, but for the intervention of the condemnation proceedings. This finding is supported by the evidence. Clark received sketch plat approval in February or March 1988. He was formally notified that his land would be taken for public use in September 1988, by an offer to purchase. The petition for eminent domain was filed on November 10, 1988. Following receipt of the September 1988 offer to purchase, Clark had no reason to take further steps

in the development. In addition, his zoning change was granted subject to platting within two years. Therefore, he could have reopened the sketch plat file and obtained final zoning approval at anytime before February or March 1990.

## Clark's Cost Valuation of the Residence

Clark's estimate of value before the taking relies, in part, on his itemized cost of construction of the residence. The County argues that this cost figure included items which cannot be considered cost of the residence—pasture seed, mowing of the pasture, legal fees, arbitration expense, mortgage title insurance fees, and unexpended costs for Clark acting as "job superintendent" and "general contractor."

Clark asserts that the County lost these arguments at trial and does not supply any authority on appeal to support the contentions.

Clark's itemized statement of costs was introduced without objection. The County cross-examined Clark regarding these costs. The County did not question any of the above costs except the mortgage title insurance fees and the costs for job superintendent and general contractor.

Although we vacate the trial court's findings of value and of highest and best use, we note that, under the facts of this case, Clark's itemized cost of construction of the residence is competent evidence for the trial court's consideration on remand.

## The Value of the 5.74-Acre Homesite

Next, the County asserts that the 5.74-acre homesite was valued inappropriately.

Clark valued the 5.74 acres at $210,000. He arrived at this value by figuring that the land was equivalent to 6 of the estate lots in the proposed development which were to sell for $35,000 per lot. Gardner used the same approach, valuing the lots at $30,000 each to arrive at a cost for the homesite of $180,000.

The trial court, on remand, is to consider the testimony of Cordry and Albright with the testimony of Clark and Gardner, which is in the record, in determining the value of the 5.74-acre homesite.

## The Absorption Rate for Sale of the Residential Lots

The County asserts that any valuation of the land based on an

assumption of 100% absorption rate (meaning all the lots would sell) was conjectural, speculative, and remote. The County reasons that Clark is not experienced in this type of development and could not expect a 100% absorption rate.

Clark testified that he had studied the rate of absorption of sales in the Wichita residential lot market. Based on these studies, he predicted it would take three years to sell all of the lots. Clark testified that the Tallgrass development had sold out in three years. Gardner testified that he studied lot sales from several developments in Wichita occurring between 1983 and 1990. Based on this study, he projected that Clark's proposed subdivision of 110 lots would sell out in two years, 55 lots per year.

The testimony of Clark and Gardner supports the assumption of a 100% absorption rate used to calculate the value of the land before the taking. Therefore, this alleged error may not be used to exclude their opinions of value.

### The Value After the Taking—Highway Noise

The County argues that the trial court erred in finding the value of the property after the taking was $549,700. In support of this argument, the County asserts: (1) The harm of the highway noise is diminished because Clark works long hours away from home; (2) the residence is close to 127th Street and to flight patterns of the Beech Aircraft plant and McConnell Air Force Base; (3) the depreciation for the noise nuisance of the highway was conjectural and speculative; and (4) because the property value was reduced due to the noise, it should have been increased by the value of the berm.

Clark's noise experts stated that although the proposed berm would improve the noise nuisance, it would not alleviate it. Both Clark's and Gardner's estimate of value after the taking took into account the cost of the berm and the improved noise level.

The noise experts conducted a noise impact study using a stretch of Highway K-96. One expert estimated that the noise level on Clark's patio would be approximately 73 decibels and could easily approach 80 decibels with the highway at maximum use. To provide a reference, the expert estimated the noise level of the courtroom at 40 decibels if everyone were quiet.

The trial court found that the noise level which will be experienced inside the residence and outside in the yard will be intrusive, unpleasant, and objectionable. We find no error in the trial court's finding as to the effect of the noise level. The foregoing testimony supports Clark's theory of value after the taking. Because we have vacated the judgment, the trial court is to reconsider the value of the property after the taking.

## Attorney Fees

The County argues that Clark is not entitled to attorney fees under K.S.A. 26-509 because he appealed the appraisers' award and then dismissed his appeal.

The County cites *In re Central Kansas Electric Coop., Inc.,* 224 Kan. 308, 582 P.2d 228 (1978). In *Central Kansas Electric,* both the condemner and the landowners appealed the appraisers' award. Five minutes before going to trial, the landowners announced that they were dropping their appeal. The jury returned a verdict for the landowners in excess of the appraisers' award. The trial court allowed the landowners attorney fees under K.S.A. 26-509. The condemner appealed. We found that the *attempted* dismissal appeared to be an attempt to place the landowners in a position to request attorney fees. We held: "Under the circumstances of this case and the *attempted* dismissal by the landowners, it was error to allow attorney fees to the landowners when they had originally been appealing parties." (Emphasis added.) 224 Kan. at 319.

The case at bar may be distinguished. Clark's appeal was dismissed almost a year, not five minutes, before trial. The County did not move to dismiss its appeal until approximately six months later. The County did not object to Clark's dismissal at the discovery conference or after receiving the notice of the trial court's intended dismissal. *Central Kansas Electric* is not controlling.

The County reasons that K.S.A. 26-509 does not authorize attorney fees in this case. The plain language of the statute refers to a jury verdict. Both parties waived a jury trial; therefore, the County asserts attorney fees are not recoverable. Clark does not address this argument.

It should be noted that this argument was not presented to the trial court. In addition, the County's position is inconsistent

with the position it took at the hearing on the motion for attorney fees. Counsel for the County made the following comments as a prelude to arguing that attorney fees for the landowner must be reasonable:

"Your Honor, I think it's very clear from the virtually uncontested evidence you've got here that Mr. Mellor and Mr. Higgins are entitled to a large fee for the amount of work they've done. They've done a marvelous job on behalf of their client. I have no quarrel with that. I have no quarrel with the amount of hours they spent or begrudge them on a personal level for their success, notwithstanding the position I have to take on behalf of my client."

Normally, issues not raised before the trial court may not be raised on appeal. However, there is an exception to the rule when the issue is a question of law which may be decided on established facts. *Pierce v. Board of County Commissioners,* 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 (1967). This issue involves construction of a statute, which is a question of law, and may be decided on the established fact that the case was tried without a jury. Thus, the exception applies.

K.S.A. 26-509 states:

"In an action on appeal the court shall assign the case for trial to a jury, or to a master in accordance with K.S.A. 60-253, or acts amendatory thereof or supplemental thereto. Whenever the plaintiff condemner shall appeal the award of court appointed appraisers, and *the jury renders a verdict* for the landowners in an amount greater than said appraisers' award, the court may allow as court costs an amount to be paid to the landowner's attorney as attorney fees."

We note the following rules of statutory construction:

1. The intent of the legislature governs.
2. In determining legislative intent, we are not limited to consideration of the language used in the statute. We may look to historical background, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *Citizens State Bank of Grainfield v. Kaiser,* 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988). But see *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs,* 247 Kan. 625, 633, 802 P.2d 1231 (1990) (Rules do not permit courts to read into a statute something that does not come within the wording of the statute.).

3. When construing a statute, we should give words in common usage their natural and ordinary meaning. *Hill v. Hill,* 13 Kan. App. 2d 107, 108, 763 P.2d 640 (1988).

K.S.A. 26-509 was last amended in 1972. The few decisions construing the statute do not address this issue.

By the clear terms of the statute, the landowner may be allowed attorney fees *only* if the *jury* renders a verdict in an amount greater than the appraisers' award. However, we reason that to differentiate between a jury trial and a trial to the court, in the attorney fees context, does not have the support of policy or logic. We hold that the legislature did not intend to limit the landowner's award of attorney fees to jury trials. We focus on the purpose of the statute—to compensate the landowner for defending against the condemner's appeal. Attorney fees may be awarded to a landowner under K.S.A. 26-509 if, in a bench trial resulting from an appeal by the condemner, the judgment for the landowner is in an amount greater than the appraisers' award.

## The Attorney Fees Award

Finally, the County argues the award of attorney fees was excessive and that the trial court abused its discretion in not following the guidelines of MRPC 1.5 (1991 Kan. Ct. R. Annot. 236).

Clark argues that the trial court's award is reasonable and within the range of normal contingent fee contracts between landowners and condemners in condemnation cases. Clark further asserts the determination of the reasonable value of attorney fees is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *State Farm Fire & Cas. Co. v. Liggett,* 236 Kan. 120, Syl. ¶ 6, 689 P.2d 1187 (1984).

Usually, a trial court may not consider a contingent fee contract in determining the amount of attorney fees to be awarded a litigant. *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 714, 366 P.2d 219 (1961). However, there is an exception in eminent domain cases. The trial court may consider contingent fee contracts in awarding attorney fees under K.S.A. 26-509. *City of Wichita v. Chapman,* 214 Kan. 575, 587, 521 P.2d 589 (1974). See Kansas Benchbook 130 (1983 Supp.).

We agree that the determination of a reasonable fee in the case at bar is within the discretion of the trial court if a fee is to be awarded. We have vacated the judgment for attorney fees and remanded for additional testimony to be presented to the trial court concerning market value and highest and best use. If, after consideration of all the evidence, *i.e.*, the record resulting in the judgments we have vacated and the testimony we have ordered to be heard on remand, the trial court finds for Clark in an amount greater than the appraisers' award, the trial court may allow Clark attorney fees under K.S.A. 26-509.

Judgment is vacated and the case remanded.

HOLMES, C.J., not participating.

■ JAMES M. MACNISH, JR., district judge, assigned.

HERD, J., concurring and dissenting: I concur with all of the majority opinion except where it rules the trial court abused its discretion in excluding the opinions of Cordry and Albright as to the property's highest and best use. We have repeatedly held that a trial court does not abuse its discretion unless it can be said that no reasonable person would agree with its decision. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990). After reviewing the foundation testimony of Cordry and Albright, I think reasonable persons could agree with the trial court's decision. I would affirm the trial court.

LOCKETT, J., joins the foregoing concurring and dissenting opinion.