No. 74,627

LANDAU INVESTMENT COMPANY, INC., and DEAUVILLE, INC., *Appellants*, v. CITY OF OVERLAND PARK, A Municipal Corporation, *Appellee*.

930 P.2d 1065

Opinion filed January 24, 1997.

*Ruth L. Landau*, of Overland Park, argued the cause and was on the briefs for appellant.

*Henry E. Couchman, Jr.*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Daniel B. Denk*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Landau Investment Co., Inc., (landowner) appeals from an order granting the City of Overland Park (City) leave to amend its eminent domain petition by correcting the legal description of easements taken. The question we must decide is whether on appeal from an appraisers' award, the district court can, under any circumstances, authorize an amendment of pleadings. We hold that under the unique circumstances set forth, the court had such authority and affirm.

### Facts

On January 27, 1994, the City filed a petition with the Johnson County District Court for eminent domain proceedings, *City of Overland Park v. Unified School District No. 229, et al.*, Case No. 94 C 1054. The City sought to condemn, among other interests, a permanent drainage easement and a temporary construction easement on Tract No. 72 which was owned by Landau Investment Company, Inc. The City alleged that the taking of private property was necessary for the public use to improve 127th Street between Switzer and Antioch Roads.

Pursuant to a contract with the City, Burns & McDonnell Engineering Co., Inc., (Burns & McDonnell) provided engineering

services for the 127th Street and Switzer improvements. Burns & McDonnell's contractual responsibilities included designing the improvements, preparing the project plans and specifications, determining and preparing legal descriptions of the easements to be acquired, and inspecting construction.

Relying on Burns & McDonnell's description, the City incorrectly described the easements on landowner's Tract 72 in its eminent domain petition as follows:

"PERMANENT DRAINAGE EASEMENT

Beginning at a point 815 feet West and 63 feet South of the Northeast corner of the Northeast ¼ of Section 25, Township 13, Range 24; thence East 127 feet; thence South 77 feet; thence West 41 feet; thence North 48° 59' 04" West 113 feet to the Point of Beginning; containing 6353 square feet, more or less.

"TEMPORARY CONSTRUCTION EASEMENT

Beginning at a point 1010 feet West and 63 feet South of the Northeast corner of the Northeast ¼ of Section 25, Township 13, Range 24; thence South 47 feet, thence East 243 feet; thence South 50 feet; thence East 90 feet; thence North 48° 03' 40" East 131 feet to a point on the existing right-of-way; thence West 55 feet; thence South 3 feet; thence West 262 feet to the Point of Beginning, containing 24264 square feet, more or less."

Project plans for the 127th Street improvements were prepared by Burns & McDonnell, showing the locations of the easements on Tract 72 and given to the City. Upon request, a copy of the project plans were given to the landowner, showing the locations of the permanent drainage and temporary construction easements that the City intended to acquire on Tract 72. Project plans correctly described the property easements to be taken by the City:

"PERMANENT DRAINAGE EASEMENT

Beginning at a point 627.20 feet West and 63.0 feet South of the Northeast corner of the Northeast ¼ of Section 25, Township 13 North, Range 24 West; thence east, parallel to the north line of Section 25, a distance of 124.78 feet; thence South, normal to the north line of Section 25, a distance of 77.0 feet; thence West, parallel to said north line, a distance of 39.6 feet; thence northwesterly a distance of 114.82 feet to the Point of the Beginning, containing 6,329 square feet.

"TEMPORARY CONSTRUCTION EASEMENT

Commencing at the Northeast corner of the Northeast ¼ of Section 25, Township 13 South, Range 24 West; thence South 87 degrees, 35 minutes, 00 seconds West along the North line of said Northeast ¼ a distance of 825.03 feet; thence South 01 degrees, 56 minutes, 20 seconds East parallel to the East line of said Northeast

¼ a distance of 63.00 feet to the true Point of Beginning of the tract herein described; thence North 87 degrees, 35 minutes, 00 seconds East a distance of 360.56 feet; thence North 02 degrees, 25 minutes, 00 seconds West a distance of 3.00 feet; thence North 87 degrees, 35 minutes, 00 seconds East a distance of 57.58 feet; thence South 37 degrees, 56 minutes, 52 seconds West a distance of 131.24 feet; thence South 87 degrees, 35 minutes, 00 seconds West a distance of 90.00 feet; thence North 02 degrees, 25 minutes, 00 seconds West a distance of 50.00 feet; thence South 87 degrees, 35 minutes, 00 seconds West a distance of 243.53 feet to a point on the East line of Fontainebleau East, First Plat, a subdivision of land in Johnson County, Kansas; thence northerly, along said East line of Fontainebleau East, First Plat, on a bearing of North 01 degrees, 56 minutes, 20 seconds West a distance of 47.00 feet to the Point of Beginning, containing 24,333 square feet."

The legal descriptions in the City's petition place the easements approximately 200 feet west of their locations as shown on the plans. As described in the petition, the temporary construction easement on Tract 72 overlaps the temporary construction easement on Tract 71 and a portion of the right-of-way on Benson Street.

On March 1, 1994, the Johnson County District Court made the necessary findings to permit the eminent domain action to proceed and appointed appraisers pursuant to the Eminent Domain Procedure Act. See K.S.A. 26-504. The appraisers were supplied with the same project plans produced by Burns & McDonnell for the City, with locations of the easement highlighted. The court-appointed appraisers met with the landowner and its counsel at the construction site on Tract 72 to view the property. They reviewed the locations of the easements as shown on the plans with the landowner and counsel.

On March 15, 1994, the court-appointed appraisers, having provided notice to the landowner, held a public hearing. The landowner and its counsel attended. The project engineer described the improvements in general terms and referred to the accurate project plans. On April 15, 1994, the court-appointed appraisers filed their appraisers' report with the court. However, the report contained the same incorrect legal description as was set forth in the petition.

On April 18, 1994, the court entered an order approving the appraisers' report. Within 30 days, the City paid to the clerk of the district court the amount of the appraisers' award in accord with K.S.A. 26-507. Project plans provided for the construction of a 10 by 5 foot reinforced concrete box and a length of grated riprap upon the permanent drainage easement on Tract 72. Prior to construction, the temporary construction easement on Tract 72 was staked as shown on the plans. The actual construction was carried out within the temporary construction easement that had been staked. These permanent improvements were completed at the location shown on the project plans.

On May 6, 1994, the landowner filed a notice of appeal from the award of the court-appointed appraisers. Following this notice, *Landau Investment Company, Inc. and Deauville, Inc. v. City of Overland Park,* Case No. 94 C 5239, was docketed for appeal with the Johnson County District Court. During trial preparation and prior to a scheduled deposition of the project manager on February 28, 1995, the City became aware that the petition and appraisers' report incorrectly described the permanent drainage and temporary construction easements on Tract 72. The landowner was immediately notified.

Based on the defective legal descriptions, the landowner filed an inverse condemnation action, alleging that the easements used in the construction of the street improvements had never been condemned by the City. In response, the City filed a motion to amend or reform the original petition and appraisers' report to include the correct legal descriptions of the easements. This motion was filed with the district court hearing the appeal. The court granted the City's motion and upon motion by the landowner also made appropriate findings for an interlocutory appeal. Pursuant to K.S.A. 20-3018(c), we transferred the landowner's interlocutory appeal from the Court of Appeals to this court.

## Issue on Appeal

The issue is whether a district court in a civil action involving an appeal from a condemnation award may, under any circumstances, grant an amendment to pleadings under K.S.A. 60-215(b), when

such amendment changes the legal description of property described in the eminent domain petition and appraisers' report.

## Nature of Action and the District Court Decision

### Eminent Domain

Eminent domain in Kansas is a special statutory creature and not a civil action governed by the Kansas Code of Civil Procedure. Proceedings in eminent domain are administrative, not judicial, in nature. *In re Application of City of Great Bend for Appointment of Appraisers*, 254 Kan. 699, 701, 869 P.2d 587 (1994). Such proceedings are in the nature of an inquest. *Urban Renewal Agency v. Decker*, 197 Kan. 157, 162, 415 P.2d 373 (1966).

The law of eminent domain in Kansas is set forth in Chapter 26 of the Kansas Statutes Annotated. K.S.A. 26-101 provides that any corporation having the right of eminent domain "shall exercise such right in a manner set forth in K.S.A. 26-501 to 22-516, inclusive." K.S.A. 26-501 *et seq.* specifies the procedure to be followed when condemnation is sought. Proceedings are initiated by the filing of a verified petition in the district court of the county in which the real estate is located. K.S.A. 26-501.

The petition shall include allegations of (1) the authority for and the purpose of the taking; (2) a description of each lot, parcel, or tract of land and the nature of the interest to be taken; (3) and insofar as their interests are to be taken, (a) the name of any owner and all lienholders of record and (b) the name of any party in possession. K.S.A. 26-502. The condemnor is required to give notice in accord with the provisions of K.S.A. 26-503. If the court finds that the plaintiff has the power of eminent domain and that the taking is necessary to a lawful corporate purpose of the plaintiff, the judge shall appoint three disinterested appraisers and fix the time for the filing of their report. K.S.A. 26-504.

"The appraisers shall, after they have been sworn, and instructed by the judge, make their appraisal and assessment of damages, by actual view of lands to be taken and of the tracts of which they are a part, and by hearing of oral or written testimony from the plaintiff and each interested party as named in K.S.A. 26-502." K.S.A. 26-506(a).

Within 30 days from the time the appraisers' report is filed, if the condemnor desires to continue with the proceedings, the condemnor shall pay into the clerk of the district court the amount of the appraisers' award as to those particular tracts and any court costs accrued to that date, including the appraisers' fees. Such payment shall be without prejudice to the condemnor's right to appeal from the appraiser's award. K.S.A. 26-507.

Upon payment of the above amount to the clerk of the court, the title, easement, or interest appropriated in the land condemned shall thereupon immediately vest in the condemnor, and the condemnor shall be entitled to the immediate possession of the land to the extent necessary for the purpose for which taken and consistent with the title, easement, or interest condemned. K.S.A. 26-507(a). The nature of the interest taken is determined by the descriptions in the petition and in the appraiser's report. *In re Application of City of Great Bend for Appointment of Appraisers,* 254 Kan. at 702-03.

Any interested party may appeal the appraisers' award by filing a written notice of appeal with the clerk of district court within 30 days after the filing of the appraisers' report. K.S.A. 26-508 provides:

"An appeal by the plaintiff or any defendant shall bring the issue of damages to all interest [interests] in the tract before the court for trial *de novo.* The appeal shall be docketed as a civil action and tried as any other civil action: *Provided, however,* the only issue to be determined therein shall be that of just compensation to be paid for the land or right therein taken at the time of the taking and for any other damages allowable by law."

### District Court Decision

In a well-reasoned opinion, District Court Judge Larry McClain, after thorough consideration of the parties' contentions, Kansas law, and the law of other jurisdictions, granted the City's motion for leave to amend, concluding:

"[A]ll parties, including the landowners, the appraisers, and the City, relied on the land description designated in the project plans throughout all previous stages of this proceeding. It was only in preparation for this appeal that the faulty legal description was discovered. The amendment, although taking in different and additional lands after assessment of compensation, does not substantially affect

the owners' rights; the assessment of compensation was based on the description designated in the project plans. The objecting party, the landowners, have had every opportunity to demonstrate to this court how they would be, in any way, prejudiced or disadvantaged by the allowance of this amendment. There has been no such showing."

## Standard of Review

The district court's decision to entertain and grant the motion to amend is a conclusion of law. "This court's review of conclusions of law is unlimited." *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1992).

## Discussion and Analysis

### Nature of the Mistake

It is important to note that the single defect in these eminent domain proceedings is in the incorrect description of the easements in the City's petition. Other than this mistake, every statutory requirement set forth in the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.*, was complied with by the court and parties.

It is also important to note that the only easements intended to be condemned were the easements set forth in the project plans. The landowner had been given a copy of the project plans after the petition was filed. At the time appraisers viewed the easements, the landowner, with counsel, viewed the property to be taken according to the project plans. Before the appraisers reported their valuation of the easements, the landowner, with counsel, was given notice and exercised its opportunity to attend a public hearing concerning the value of easements to be taken. There is no dispute that the appraisers valued the property intended to be condemned as described in the project plans. Both the landowner and the City proceeded through the eminent domain proceeding with the understanding that the City had condemned the easements shown in the project plans.

In these circumstances, our decision is made easier because of an earlier Kansas case which gives insight into the purpose for the separate statutory administrative proceeding in condemnation cases. *Dick v. Drainage District No. 2*, 187 Kan. 520, 521, 358 P.2d 744 (1961), involved an action by the landowners against a drainage

district for damages resulting from the appropriation of a right-of-way on the landowners' property by the drainage district for its use. The landowners' property had been condemned in an eminent domain proceeding. The administrative proceeding had been completed, and the landowners took no appeal from the condemnation award. Within 2 years, the landowners commenced an action for damages for the taking. Because of the posture of the case on appeal, the drainage district was bound by its previous admission that the original condemnation proceeding was void. The main defect in the condemnation proceedings was that the "[p]etition in [c]ondemnation did not mention or indicate that there would be any levees and dikes." 187 Kan. at 526.

Under the above facts, the court held that "the district court in which the land is situated has jurisdiction to hear and determine an independent common law action for damages, where property of the landowners is appropriated to the use of a governmental authority under void condemnation proceedings." 187 Kan. at 529.

The *Dick* court discusses the failure of the petition to indicate or give a proper description of the levees and dikes to be constructed. In doing so, the court sets forth the purpose of the administrative proceedings in condemnation cases:

"It is contemplated in the law of eminent domain that the landowner shall have a right to have a fair appraisal by fair and impartial commissioners who are possessed of all the facts necessary to determine what just and full compensation for the landowners shall be under the circumstances. In addition to this the landowner has a right to appeal from the award if he is dissatisfied. . . .

"Many landowners whose property has been condemned would be willing to accept the award of impartial commissioners when the decision as to just compensation is based upon all of the necessary facts, but not otherwise.

"The law-making body in its legislative wisdom specifically prescribed what facts were to be stated in the petition for condemnation, the jurisdictional instrument requisite to the commencement of a valid condemnation proceeding. *A vital failure in this document, one which makes it impossible for the commissioners to award just and full compensation to the landowner, vitiates the proceeding.* A decision to the contrary would in effect foster and promote litigation in condemnation proceedings. It would burden landowners with costly expenses and delay, and thereby serve only to defeat justice in matters of eminent domain where the legislature has specifically taken the precaution to safeguard against such abuse by a condemning authority." (Emphasis added.) 187 Kan. at 527.

Unlike *Dick*, all proceedings in this case substantially complied with the contemplated purpose of eminent domain law. There is no dispute in this case that the landowner received a fair appraisal by fair and impartial commissioners who were possessed of all the facts necessary to determine a just and full compensation for the landowner's interests.

Unlike *Dick*, there was no mistake in this case which made it impossible for the commissioners to award just and full compensation to the landowner. Just the opposite occurred. The landowner, along with the court-appointed appraisers, viewed the easements that were to be condemned, and a value on those easements was reported to the court. Hence, we may conclude, consistent with *Dick*, that the mistake in description was not the kind of "vital failure" which "vitiates the proceeding." 187 Kan. at 527.

K.S.A. 26-502 requires that a petition in condemnation contain, among other things, "a description of each lot, parcel or tract of land and the nature of the interest to be taken." This same statute provides that "[n]o defect in form which does not impair substantial rights of the parties shall invalidate any proceeding." K.S.A. 26-502. Under the unique circumstances of this case, the misdescription of the easements in the City's petition amounts to a defect in form which did not impair substantial rights of the parties.

We, however, must emphasize the importance of K.S.A. 26-502 within the scheme of the administrative proceedings in eminent domain. A line of cases decided by this court clearly emphasizes the importance of meticulous compliance with K.S.A. 26-502. In *Roberts v. Upper Verdigris Watershed*, 193 Kan. 151, 392 P.2d 914 (1964), the condemnor attempted to introduce evidence in trial upon appeal from the appraisers' award that its use of the easement was to be limited. The condemnor sought to reduce the amount of compensation owed by establishing a more limited use than was described in the petition. We held:

"The landowners and the condemner may, and must, rely on the language of the commissioners' [appraisers'] report as to the extent of the use. If the landowners are not compensated in full for the full use, as set out in the report, the condemner can take the full use in the future without further compensation to the landowners.

. . . .

". . . If the condemner desires only an infrequent limited use of the easement condemned it need only made certain that the limited use is properly stated in the petition and incorporated in the commissioners' report which is filed with the register of deeds and governs the extent of the easement and the extent of the use." 193 Kan. at 157-59.

This same principle was affirmed in the case of *City of Great Bend*, 254 Kan. 699, Syl. ¶ 2. Experts for the condemnor attempted to introduce evidence showing a lesser taking than was described in the petition for condemnation and appraisers' report. While we found no prejudice to the rights of the landowners in the admission of the evidence, we reviewed Kansas law and concluded:

"[O]nce the nature of the interest to be taken is identified in the appraisers' report, parol evidence will not be admitted for the purpose of establishing a lesser interest based on the condemnor's intended use. The rights acquired, not the intended use of those rights, are the basis for assessing landowners' damages. *Roberts*, 193 Kan. at 159." 254 Kan. at 703.

The rationale for such a principle is apparent, for " '[i]f the land-owners are not compensated in full for the full use, as set out in the [appraisers'] report, the condemnor can take the full use in the future without further compensation to the landowners.' *Roberts*, 193 Kan. at 158." *City of Great Bend*, 254 Kan. at 703; see *Hudson v. City of Shawnee*, 246 Kan. 395, Syl. ¶ 2, 790 P.2d 933 (1990); *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, Syl. ¶ 4, 455 P.2d 496 (1969); *Diefenbach v. State Highway Commission*, 195 Kan. 445, Syl. ¶ 2, 407 P.2d 228 (1965); *Sutton v. Frazier*, 183 Kan. 33, Syl. ¶ 8, 325 P.2d 338 (1958).

The landowner argues that the above line of cases stands for the proposition that the City must take the land described in the petition and no amendment may be made to take a different interest than what was described. Thus, following the precedent above, the burden is placed on the condemnor to correctly and precisely describe the land to be taken.

It must be observed that the nature of interest to be condemned is in many ways similar to the requirement that the petition incorporate the precise legal description of property to be taken. Both place a limit on the use by the condemnor and define any remain-

ing interest in the landowner. However, our cases addressing the nature of the interest taken have prevented the condemnor from alleging on appeal an interest different than that contained in the petition. Otherwise, the condemnor would be allowed to pay for a limited use and take the full use in the future without further compensation. See *City of Great Bend*, 254 Kan. at 703.

The trial court distinguished *Roberts, Hudson*, and *City of Great Bend* on the basis that in those cases, the condemnor was attempting to claim an infrequent use of the condemned property, and in this case condemnor claimed that it has no use for the condemned easements and that none of the parties ever acted on the assumption that the easements described in the petition were the property taken. We believe that such a distinction is sound under the unique facts of this case.

At the same time, to the extent that the above cases require that a petition in eminent domain identify the interest to be taken in the petition, we believe that the above cases apply in principle to the case we now consider. If in the present case the condemnor sought by way of amendment to add something new to the petition or to delete property described in the petition, the court would then be required to adhere to the basic principle that the petition and appraisers' report controls. Otherwise, real prejudice to the substantial rights of the landowner results because the appraisers under those circumstances would have never been given the opportunity to appraise the property sought to be condemned. The result would be much like that which occurred in *Dick*, 187 Kan. at 527:

> "The law-making body in its legislative wisdom specifically prescribed what facts were to be stated in the petition for condemnation, the jurisdictional instrument requisite to the commencement of a valid condemnation proceeding. A vital failure in this document, one which makes it impossible for the commissioners to award just and full compensation to the landowner, vitiates the proceeding."

The amendment granted by the trial court in this case did not have the effect of adding something new or deleting property described in the petition and appraisers' report. The amendment corrected a defect in form by allowing the City to insert the description of the only easements that were ever intended to be condemned.

The appraisers viewed this property and valued it with all facts necessary to determine what just and full compensation for the landowner should be. The appraisers returned their award of compensation after viewing the property with the landowner present and after a hearing wherein landowner was given the opportunity to offer further evidence as to value. We have reviewed the entire record and find no evidence of any prejudice to the landowner.

Authority to Amend

On appeal from an appraisers' award, the law provides that such appeal shall be docketed as a civil action and tried as any other civil action. K.S.A. 26-508. In any civil action, the court has authority to remedy a defect in form which does not affect the substantial rights of the parties. In *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 693, 676 P.2d 84 (1984), we held that the "[c]ourt rulings [in an eminent domain proceeding], prior to an appeal which provides a trial de novo, are not res judicata to the reconsideration of the issues at the de novo trial."

We have concluded previously that the misdescription under the unique facts of this case did not vitiate the eminent domain proceedings and that the misdescription was a defect in form. See K.S.A. 26-502. As such and under the circumstances outlined above, we conclude that the district court on appeal in a de novo proceeding has authority to grant leave to amend so that the issue of damages will be properly framed for the jury.

The landowner contends that language contained in K.S.A. 26-508 providing that the "only issue to be determined . . . shall be compensation" prevents the court from amending the petition. The City responds that case law suggests otherwise. The City concludes that this language prevents the landowner from asserting, on appeal, such issues as follows: that the condemnor does not possess the right of eminent domain; that its petition for condemnation did not state a cause of action; that the petition failed to show a public necessity for the condemnation; that the property sought to be condemned was not being condemned for a public use and purpose; or that the landowner is being deprived of property without due process of law in violation of the United States Constitution.

The trial court correctly points out that the above questions should be litigated in a separate independent action, such as for injunctive relief. See *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 156, 318 P.2d 1000 (1957); *Sutton v. Frazier*, 183 Kan. at 37-38.

Consideration of the amendment provisions of our Code of Civil Procedure provide support for our conclusion that leave to amend was properly given in this case. Leave to amend a pleading "shall be freely given when justice so requires." K.S.A. 60-215(a). K.S.A. 60-215(b) authorizes the court to amend the pleading to conform to the evidence "by express or implied consent of the parties" or "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

The policy of permitting amendments to the pleading "when justice so requires" and when the merits of the action will be subserved thereby and the opposing party would not be prejudiced, as expressed in K.S.A. 60-215(a), is also reflected in the statute governing the contents of an eminent domain petition. K.S.A. 26-502 provides that "[n]o defect in form which does not impair substantial rights of the parties shall invalidate any proceeding."

In a few other contexts, this court has examined the application of the civil procedure code on an eminent domain appeal. In *Diefenbach*, 195 Kan. at 448, the appellants objected to testimony of an expert witness on the ground that the witness' valuation of the land was based on an erroneous theory under traditional eminent domain valuation. This court agreed that the witness was incorrect. 195 Kan. at 448-49. Nevertheless, the court stated that under the general rules applicable to civil actions, an objection to evidence could not be made for the first time on appeal. 195 Kan. at 450. Thus, the *Diefenbach* court rejected the appellants' request for a new trial.

A second case examining the relationship of eminent domain and civil procedure is *State Highway Commission v. Lee*, 207 Kan. 284, 485 P.2d 310 (1971). In this case, the court examined the admissibility of evidence in a de novo appeal of an appraisers' award. The straightforward holding states:

"The new procedural act in eminent domain proceedings also became effective January 1, 1964, when the new code of civil procedure became effective. Under the provisions of K.S.A. 1970 Supp. 26-508, an appeal taken from an award in a condemnation action 'shall be docketed as a civil action [in the district court] and tried as any other civil action.'. . .

"The new code of civil procedure incorporated Article 4, which is the uniform code of evidence, and it is thereby made applicable to the trial of condemnation actions." 207 Kan. at 290.

Following this declaration, the *Lee* court rejected all prior condemnation cases which applied the old exclusionary rules of evidence as controlling precedent. See *In re Condemnation of Land for State Highway Purposes*, 235 Kan. 676, 683 P.2d 1247 (1984).

A more limited application of the civil procedure code is found in *City of Wellington v. Miller*, 200 Kan. 651. The landowner relies on this case to support its contention that the court is without jurisdiction to authorize any amendments to pleadings on appeal from a condemnation award. In *Miller*, this court considered whether the city of Wellington, which had appealed the appraisers' award, could dismiss the appeal pursuant to K.S.A. 60-241 over the objection of the landowner, who did not appeal and who had not filed a responsive pleading. The court held that "[t]he provisions of K.S.A. 60-241 providing for dismissal of actions do not lend themselves to condemnation appeals." 200 Kan. at 652. The *Miller* court rejected the trial court's use of the civil procedure code because the code was inconsistent with the appeal provisions of the Eminent Domain Procedure Act. 200 Kan. at 652. The court stated:

"The provisions of K.S.A. 26-508, providing that the appeal shall be 'tried as any other civil action,' applies to the presentation of the facts and not to the formation of the pleadings. The eminent domain statute forms the issue. The only issue to be determined shall be that of just compensation for the land or right taken and other damages, and the appeal brings the issue of damages to all interests in the tract before the court for trial *de novo*. (K.S.A. 26-508.) The statute takes the place of pleadings." 200 Kan. at 652.

The issue in *Miller* dealt with an attempt to dismiss the appeal without prejudice under 60-241. The court determined that once an appeal is filed by one interested party, the statute itself places the other parties in the position of cross-appellants, and the appeal

cannot be dismissed over the objection of any person having an interest in the tract. 200 Kan. at 653. However, the court did not address whether 60-241(a)(1)(ii) would serve to dismiss the appeal if a stipulation of dismissal was signed by all parties to the action.

We do not accept the validity of the landowner's far-reaching contention that Chapter 60 motions may never be employed in an appeal under K.S.A. 26-508. The court's statement in *Miller*, that the language in K.S.A. 26-508 "applies to the presentation of the facts and not to the formation of the pleadings," 200 Kan. at 652, must be viewed in the context of K.S.A. 60-241 and not Chapter 60 in its entirety.

The above cases, dealing with application of the Kansas Code of Civil Procedure to eminent domain cases docketed as civil appeals, illustrate a general strategy this court has taken regarding the application of the civil procedure code to eminent domain appeals. On the whole, the appeal is conducted as any civil trial. However, if a provision of the civil procedure code counteracts or contravenes the nature of the Eminent Domain Procedure Act, the civil procedure code will not be applied.

K.S.A. 60-215(a) makes specific provision for amending a pleading "to which no responsive pleading is permitted." The provision in K.S.A. 60-215(a), affording an absolute right to amend a pleading within 20 days after service, obviously does not apply to appeals from eminent domain proceedings for some of the same reasons set forth in *Miller*. However, permitting the condemnor to amend the eminent domain petition "by leave of court," under the unique circumstances of this case, is not inconsistent with the Eminent Domain Procedure Act.

The landowner argues that once the City pays into court the amount of the appraisers' award, the following language in K.S.A. 26-507(a) deprives the district court of jurisdiction to amend the pleadings:

"Upon such payment being made the *title, easement or interest appropriated in the land condemned shall thereupon immediately vest in the plaintiff*, and it shall be entitled to the immediate possession of the land to the extent necessary for the purpose for which taken and consistent with the title, easement or interest

condemned. The plaintiff shall be entitled to all the remedies provided by law for the securing of such possession." (Emphasis added.)

Thus, the landowner argues that the description of the property contained in the petition was in fact the land condemned. The land upon which the City placed its improvements, although viewed and valued by the appraisers, now must again be condemned through inverse condemnation by the landowner. Even though the landowner received the value of this property when it withdrew the funds from the court, the City must again pay the landowner for the value of this property in damages because, due to the mistake, the City did not condemn the landowner's property.

The amendment granted by the trial court and affirmed in this opinion relates back to the time of the filing of the petition. See K.S.A. 60-215(c). Thus, upon payment by the City under the provisions of K.S.A. 26-507(a), title in the easements as understood by all parties and the court vested in the City. It must again be emphasized that all parties relied upon the correct description in the project plans, that the property appraised was the property intended to be condemned, that all parties proceeded with full knowledge of the property sought to be condemned, that neither the parties nor the court was deceived or misled, and that the record contains no evidence of any prejudice to the landowner. In fact, granting the amendment under these circumstances preserves judicial economy, reduces costly expense and delay, and serves to promote justice in these proceedings.

## Other Jurisdictions

There is no uniformity among foreign jurisdictions involving this question.

"In some jurisdictions, the condemnor's motion for leave to amend an original petition and plat, alleging that it had inadvertently misdescribed the property taken, is denied where it is filed after the property has been physically seized. In other jurisdictions, however, the condemnor may amend its petition to include a correct property description even after the decision is final as to its right to take the property; in these jurisdictions, the correct description is considered essential to determining fair compensation." 27 Am. Jur. 2d, Eminent Domain § 534.

The majority and dissenting opinions in *Peoples Natural Gas Co. Appeal*, 399 Pa. 226, 160 A.2d 391 (1960), best illustrate the two opposing views regarding amendments in eminent domain proceedings. Three justices of the Pennsylvania Supreme Court, with two justices dissenting, reversed the trial court's denial of the condemnor's motion to amend a misdescribed easement. Not unlike the case we are called upon to decide, the engineer made an error in preparing the description of the easement to be condemned. The Peoples Natural Gas Company filed a petition and bond with the mistaken property description. The court noted that the northwest extremity of the landowner's property was not the stone chosen by the engineer but a point 25.3 feet further away. Thus, the distance between this correct point and the staked line was 257.3 feet instead of the 232 feet mentioned in the bond. In Pennsylvania, once bond is filed and approved by the court, the right of the corporation to enter upon the enjoyment of its condemned easement is complete.

Much like the landowner in this case, the landowner argued that the gas company must be held to the description contained in the unamended bond because when the bond was filed, title to the right-of-way described therein automatically passed to the gas company. The landowner sought additional compensation for the land actually described. 399 Pa. at 229.

The majority opinion comments that the only blemish in the whole proceedings consisted of a slight mistake in description, while both parties were aware of the correct position of the right-of-way. 399 Pa. at 230. The majority opinion emphasizes, much as we do in this case, that the landowner was never deceived with regard to the exact location of the pipeline. The easement was properly marked for all to see, including the landowner. The pipe was placed where the stakes were driven. The court concluded:

"It would be paradoxical in the extreme if the law, whose principal purpose is to correct mistakes and redeem grievances to the extent that this may be done by law, would refuse to grant relief where the mistake is as obvious as it is here, where no one has been injured by the mistake and where the rights of no third parties have intervened." 399 Pa. at 236.

The dissent echoes the argument of the landowner in this case. "The instant the bond is approved it becomes the equivalent of cash, the owner's right to compensation becomes vested and absolute according to the bond, and title to the land condemned actually passes to the condemnor (citations omitted)." 399 Pa. at 237-38. The dissent would not permit amendment beyond the point of court approval of the bond, for it is at this moment that there is an actual taking. 399 Pa. at 239.

Numerous cases are cited by the parties in support of their respective positions. One case relied on by the trial court was decided by the Supreme Court of Oklahoma. In *Oklahoma City v. Lockert*, 484 P.2d 523 (Okla. 1971), the court reversed the trial court's refusal to grant leave to amend in a situation similar to our case. The description was defective in that the tract was actually in the "Southeast" quarter and was not in the "Southwest" quarter. The court noted:

"In the present case it is clear that the City and the named defendants proceeded upon the assumption that the property was correctly described in the petition and through the filings to and including the commissioners' report and defendants' application to withdraw the $25,000.00. Defendants were not misled in any degree. They appeared before the court in response to the notice. There is no claim that the commissioners inspected any property other than that owned by the defendants. The record reflects that the commissioners did in fact inspect defendants' property. In their application for disbursement of the $25,000.00 to them the defendants recognized, although erroneously, that the description had reference to the land owned by them, and asked for the fund 'for taking of defendants' land.' We fail to see wherein defendants have been misled or prejudiced." 484 P.2d at 526.

The court concluded:

"It is our conclusion that under the present circumstances and in furtherance of justice the City was entitled to amend the petition and subsequent filings in the case, including the commissioners' report to reflect the correct description of the property, without prejudice to the City's demand for a jury trial filed in the cause. The trial court erred in denying the City leave to do so." 484 P.2d at 527.

See also *Hamilton v. Com. Transp. Cabinet*, 799 S.W.2d 39 (Ky. 1990) (justice requires the granting of leave to amend to include the correct description); *Blissfield Schools v. Strech*, 346 Mich. 186, 189, 77 N.W.2d 785 (1956) (authorizing amendment, noting that

"[n]o claim is made that prejudice resulted from the error or that anyone was misled because of the incorrect description in the original petition"); but see *State Ex Rel. County of Mississippi v. Sallings*, 434 S.W.2d 588, 592 (Mo. 1968) (holding that after report of commissioners has been filed, amendments to include different or additional lands, substantially changing the issues or prejudicing rights of opposing parties, will usually be denied); *Sassman v. State Highway Commission*, 45 S.W.2d 1093, 1095 (Mo. 1932) (failure to describe correctly in condemnation petition and commissioners' report land sought to be taken rendered void entire proceedings with reference to land improperly described or not designated).

We hold that under the unique circumstances of this case, where by reason of mistake, the petition and appraisers' report contain an incorrect legal description of the interest taken and the landowner will suffer no prejudice, the district court has authority under the provisions of K.S.A. 60-215(b) to permit the condemnor to amend the eminent domain petition and the appraisers' report to correct the error so that the issue of damages will be properly framed for trial.

Affirmed.